UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **WILLIAM MARKS,** | ) ) ) | |
| Petitioner | ) ) | Civil Action No. |
| v. | ) ) | 25-12506-BEM |
| **WELLS FARGO ADVISORS, LLC,** *et al.*, | ) ) ) | |
| Respondents. | ) ) ) | |

**MEMORANDUM AND ORDER**

**MURPHY, J.**

Petitioner William Marks ("Marks") seeks a judgment vacating or modifying an arbitration award, which dismissed Marks's Electronic Funds Transfer Act (the "EFTA") claim. Respondents Wells Fargo Advisors, LLC and Wells Fargo Bank, N.A. (collectively, "Wells Fargo"), in their opposition, ask the Court to confirm the arbitration award. For the reasons below, the Court will deny Marks's petition and grant Wells Fargo's motion.

**I.   Background**

   **A.   Factual Background**

In September 2010, Marks established a revocable living trust, which has held all his assets since that time. Dkt. 1 ("Petition" or "Pet.") ¶¶ 9–10. In May 2016, Marks opened a Wells Fargo account that combined brokerage services and a linked debit/checking account. *Id.* ¶ 8. This account was an asset within Marks's revocable living trust. *Id.* ¶ 11. Marks used the Wells Fargo account for conducting everyday bill payment, household purchases, and other similar purposes. *Id.* ¶ 8.

Between 2021 and 2023, Marks was the target of a cybercrime, in which he lost over $575,000 from his Wells Fargo account after someone hacked into his PayPal account and initiated unauthorized electronic fund transfers ("EFTs"). *Id.* ¶ 12; *see also* Dkt. 7 ("Defendant's Response" or "Resp.") at 2, 5; Dkt. 17 ("Petitioner's Reply" or "Reply") at 1. Marks reported the unauthorized transactions to Wells Fargo in June 2023, after which Wells Fargo investigated. Pet. ¶¶ 13–15. Wells Fargo's investigation concluded after Wells Fargo determined that the EFTs were "authorized" under the EFTA, and thus that Marks was liable for those transfers. *Id.* ¶ 16.

Marks initiated arbitration against both Wells Fargo and PayPal, in separate proceedings, at the end of 2023. *Id.* ¶ 18; Resp. at 1 n.1. The actions were consolidated in March 2024. Reply at 6; Resp. at 1 n.1. Marks settled with PayPal on all claims in April 2025. Reply at 6; Resp. at 3–4. In June 2025, Wells Fargo sought leave to file a dispositive motion, arguing that the EFTA did not apply to Marks's account. Pet. ¶¶ 20–21. Over Marks's opposition, the arbitrator granted leave for Wells Fargo to file the motion, and both parties briefed the issue of whether the EFTA protected an account held within a natural person's revocable living trust where the account is used solely for personal, family, and household purposes. *Id.* ¶¶ 22–26. On August 8, 2025, the arbitrator held that the EFTA did not protect a natural person's revocable living trust and dismissed Marks's EFTA claim. *Id.* ¶ 27. On September 26, 2025, the arbitrator issued a final award, which dismissed all of Marks's claims against Wells Fargo, referencing the previously dismissed the EFTA claim and Marks's voluntarily withdrawn negligence claim. Resp. at 3; Reply at 6. The award also confirmed the settlement of all claims between Marks and PayPal. Resp. at 3; Reply at 6.

B.  **Procedural Background**

On September 10, 2025, after the arbitrator held that the EFTA did not apply to his account, Marks filed this petition to vacate or modify the arbitration award under the Federal Arbitration

2

Act ("FAA").[1]  Pet.; *see also* Reply.  On November 19, 2025, Wells Fargo filed its opposition and cross-motion to confirm the arbitration award.  Resp.  The Court held a hearing on January 29, 2026, and took the matter under advisement.

## II.    Standard of Review

Judicial review of an arbitrator's ruling "is extremely narrow and exceedingly deferential, and is indeed among the narrowest known in the law." *Raymond James Fin. Servs., Inc. v. Fenyk*, 780 F.3d 59, 63 (1st Cir. 2015) (citations and internal quotation marks omitted); *see also Teamsters Loc. Union No. 42 v. Supervalu, Inc.*, 212 F.3d 59, 61 (1st Cir. 2000) ("[D]isputes that are committed by contract to the arbitral process are almost always won or lost before the arbitrator.  Successful court challenges are few and far between.").  When a party seeks judicial review of an arbitration decision, a court will "set that decision aside only in very unusual circumstances." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995).  "The 'burden placed on the party seeking vacatur is extraordinarily high, given the strong federal policy in favor of enforcing arbitral

---

[1] The Court notes that the Petition was filed before the arbitrator issued what would be called a final judgment in federal court, which is to say an absolute disposition of all claims.  This does not necessarily mean that it was not "final" for purposes of the FAA.  *See, e.g.*, *Hart Surgical, Inc. v. Ultracision, Inc.*, 244 F.3d 231, 235 (1st Cir. 2001) (concluding that a liability decision was sufficiently final for FAA review where the parties agreed to bifurcate, reserving consideration of other fact patterns).  Whether the order was final matters because "the FAA gives courts the power to confirm only a final 'award' of an arbitral panel." *Bluegreen Vacations Unlimited, Inc. v. T. Park Cent. LLC*, 2025 WL 315400, at *2 (S.D.N.Y. Jan. 28, 2025) (quoting *Major League Baseball Players Ass'n v. Arroyo*, 2024 WL 3539575, at *3 (S.D.N.Y. July 24, 2024)); *see also Univ. of Notre Dame (USA) in England v. TJAC Waterloo, LLC*, 49 F.4th 13, 21–22 (1st Cir. 2022).  "[A]n arbitration award, to be final, must resolve all the issues submitted to arbitration, and . . . it must resolve them definitively enough so that the rights and obligations of the two parties, with respect to the issues submitted, do not stand in need of further adjudication." *Bluegreen Vacations*, 2025 WL 315400, at *2 (quoting *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 176 (2d Cir. 1998)).  That said, because the arbitrator has since issued a final award, referenced in both parties' briefing, for which the issues presented to this Court apply equally, the Court concludes that it has the authority under the FAA to review the Petition, at least, by treating the Petition as having been supplemented under Fed. R. Civ. P. 15(d).  *See U.S. ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 5 (1st Cir. 2015) (holding that ripeness "falls within the cluster of defects that may be cured by a supplemental pleading under Rule 15(d)"); *see also Mathews v. Diaz*, 426 U.S. 67, 75 & n.8 (1976) (recognizing that plaintiff had not satisfied "a nonwaivable condition of jurisdiction" before filing suit, but noting that plaintiff had subsequently satisfied the condition so "[a] supplemental complaint in the District Court would have eliminated this jurisdictional issue").

awards.'" *Durant v. Alerion Yachts, LLC*, 2025 WL 1361700, at *3 (D. Mass. May 9, 2025) (quoting *Kruse v. Sands Bros. & Co., Ltd.*, 226 F. Supp. 2d 484, 487 (S.D.N.Y. 2002)).

"[S]ection 10(a) of the FAA[] authorizes vacatur only in cases of 'specified misconduct or misbehavior on the arbitrators' part, actions in excess of arbitral powers, or failures to consummate the award.'" *Hoolahan v. IBC Advanced Alloys Corp.*, 947 F.3d 101, 111 (1st Cir. 2020) (quoting *Cytyc Corp. v. DEKA Prods. Ltd. P'ship*, 439 F.3d 27, 32 (1st Cir. 2006)).  A court may also vacate an arbitration award where the arbitrator acts with "manifest disregard of the law." *Mountain Valley Prop., Inc. v. Applied Risk Servs., Inc.*, 863 F.3d 90, 94–95 (1st Cir. 2017) (calling into question the continued validity of this doctrine, but applying it anyway).  Under the common law doctrine of manifest disregard of the law:

> [A] successful challenge to an arbitration award, apart from section 10, depends upon the challenger's ability to show that the award is (1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact.

*Id.* (alteration in original) (quoting *McCarthy v. Citigroup Glob. Mkts., Inc.*, 463 F.3d 87, 91 (1st Cir. 2006), *abrogated by*, *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008)).  Lastly, a court "may vacate an arbitration award if it violate[s] an explicit . . . well defined and dominant public policy, as ascertained by reference to . . . laws and legal precedents." *Unión Internacional UAW, Loc. 2415 v. Bacardí Corp.*, 8 F.4th 44, 51 (1st Cir. 2021) (alterations in original) (internal quotation marks omitted) (quoting *Mercy Hosp., Inc. v. Mass. Nurses Ass'n*, 429 F.3d 338, 343 (1st Cir. 2005)).

However, "[t]o obtain vacatur of an arbitration award, '[i]t is not enough for [a party] to show that the [arbitrator] committed an error—or even a serious error.'" *Raymond James*, 780 F.3d at 63 (second and third alterations in original) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l*

4

*Corp.*, 559 U.S. 662, 671 (2010)). Rather, "[t]he challenging party has the burden to establish 'substantially more than an erroneous conclusion of law or fact.'" *Rogers v. Ausdal Fin. Partners, Inc.*, 168 F. Supp. 3d 378, 385 (D. Mass. 2016) (quoting *Loc. Union No. 251 v. Narragansett Imp. Co.*, 503 F.2d 309, 312 (1st Cir. 1974)).

### III. Discussion

#### A. Petition to Vacate or Modify

##### 1. Section 10(a)(4)

"A party seeking relief under [Section 10(a)(4)] bears a heavy burden." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). A petitioner's demonstration that "the arbitrator[] committed error—even serious error—does not justify setting aside the arbitral decision." *Cytyc*, 439 F.3d at 32. "'It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice that his decision may be unenforceable.'" *Id.* (quoting *Major League Baseball Players Assn. v. Garvey*, 532 U.S. 504, 509, (2001)). Because courts "'do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts,'" a court may not reconsider the merits of an arbitration award, even if an error in that award "is painfully clear." *Hoolahan*, 947 F.3d at 116 (quoting *Advest*, 914 F.2d at 8). As "long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not to suffice to overturn his decision." *Id.* (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

Marks argues that the arbitrator exceeded his authority under the arbitration agreement by determining the broader question of law regarding the EFTA. Pet. ¶¶ 30–31; Reply at 18–20. But the arbitrator had authority under the parties' contract to determine whether the EFTA applied to Marks's account. The parties' agreement required the parties to submit "disputes" to the American

5

Arbitration Association for arbitration, which is defined in part as "any unresolved disagreement relating in any way to services, accounts, or matters. . . . It also includes statutory, common law, and equitable claims."  Pet. ¶ 30.  While Marks frames the issue of the EFTA's application as broader than "his account," *id.* (emphasis in original), whether the EFTA governs a living revokable trust is in fact a dispute related to his account.  That the issue may also bear on other accounts does not remove the arbitrator's authority under the contract, especially where the arbitrator's decision does not bind any other parties or other accounts.  Whether the EFTA governs is a threshold issue for the very claims Marks sought to arbitrate in the first place.  *Cf.* Reply at 19 ("Petitioner's demand for arbitration[] was solely about Wells Fargo's adherence to the EFTA and Regulation E." (emphasis in original)).  An arbitrator cannot assess a party's compliance with the EFTA without first determining that the EFTA applies.  Simply put, resolving the required statutory question related to Marks's claims falls directly within the scope of the parties' agreement.  *See* Pet. ¶ 30 (quoting Dkt. 1-1 at 4) (defining "dispute" in the parties' contract as "includ[ing] statutory, common law, and equitable claims").

Nor is there anything unusual or problematic about this result.  Parties may contract to have arbitrators determine questions of federal law without violating public policy.  As the First Circuit has explained, "arbitral awards [are] 'nearly impervious to judicial oversight' because both parties 'have contracted to have disputes settled by an arbitrator' and therefore 'it is the arbitrator's view of the facts and the meaning of the contract that they have agreed to accept.'"  *UMass Mem'l Med. Ctr., Inc. v. United Food & Com. Workers Union*, 527 F.3d 1, 5 (1st Cir. 2008) (first quoting *Supervalu*, 212 F.3d at 61; then quoting *Misco*, 484 U.S. at 37–38).

### 2. Manifest Disregard of Law

Marks also argues that the arbitrator acted in "manifest disregard" of the law in ruling that the EFTA did not govern his claims.  Reply at 8.  Wells Fargo argues that Marks has not identified

6

any directly on point case law that the arbitrator ignored, and thus the decision was not made in manifest disregard of the law.  Resp. at 7.

To the extent that manifest disregard of the law is still a valid basis to vacate an arbitration award, "it does so only as a judicial gloss on § 10." *Ortiz-Espinosa v. BBVA Sec. of P.R., Inc.*, 852 F.3d 36, 46 (1st Cir. 2017), *abrogated in part on other grounds by*, *Badgerow v. Walters*, 596 U.S. 1 (2022).[2]  Manifest disregard of the law occurs "where it is clear from the record that the arbitrator recognized the applicable law—and then ignored it." *Advest*, 914 F.2d at 9.  "'If there is even a barely colorable justification for the outcome reached' that can be inferred from the record, a court must confirm the award." *Ebbe v. Concorde Inv. Servs., LLC*, 392 F. Supp. 3d 228, 236 (D. Mass. 2019) (quoting *Bear, Stearns & Co. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 91 (2d Cir. 2005)), *aff'd*, 953 F.3d 172 (1st Cir. 2020).

Regardless, the Court need not determine whether the arbitrator correctly interpreted the EFTA.  Marks himself recognizes "the apparent absence of any court decisions clarifying whether the EFTA protected an account held within a natural person's revocable living trust and used solely for personal, family, and household purposes." Pet. ¶ 23.  There is no dispute that the arbitrator considered the same authority Marks now identifies in arguments before this Court. *Id.* ¶ 24–25; Reply at 11–13.  But while Marks argues that the arbitrator ignored that judicial precedent, *see, e.g.*, Reply at 7, distinguishing legal authority about other statutes is a far cry from ignoring applicable law.  Moreover, the arbitrator applied the literal meaning of the statute.  The EFTA explicitly excludes trust accounts from the accounts entitled to relief under the statute: "the term

---

[2] The First Circuit recognized that this non-statutory ground for vacating an award "is in question" based on Supreme Court precedent but "has avoided answering the question and instead has assumed its continued application when no manifest disregard of the law [has] occurred." *Hoolahan*, 947 F.3d at 111 n.14 (quoting *Dialysis Access Ctr., LLC, v. RMS Lifeline, Inc.*, 932 F.3d 1, 13 n.13 (1st Cir. 2019)).  Because the Court finds that, even assuming this doctrine remains a valid ground for vacating award, the arbitrator did not act in manifest disregard of the law, the Court declines to analyze the continuing applicability of this doctrine.

'account' . . . does not include an account held by a financial institution pursuant to a bona fide trust agreement." 15 U.S.C § 1693a(2); *see also* 12 CFR § 205.2(b)(3). Though Marks argues that a natural person's revocable living trust used solely for personal purposes should not qualify under this exception, *e.g.*, Reply at 10, given the absence of authority and the explicit carve out from the EFTA for "trusts," the arbitrator's reasoning and conclusions that the EFTA was not applicable to Marks's account are—at the very least—a plausible interpretation of the statute.

"Even if [the Court were] to assume, for the sake of argument, that the arbitrator's legal conclusions were incorrect, his award plainly was not '(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling.'" *Mountain Valley*, 863 F.3d at 93 (quoting *McCarthy*, 463 F.3d at 91). Holding otherwise would require this Court to independently assess the merits of Marks's underlying claims, an inquiry expressly prohibited under the FAA. *See id.* at 95 ("[C]ourts are not in the business of 'hear[ing] claims of factual or legal error by an arbitrator or to consider the merits of an award.'" (second alteration in original) (quoting *Poland Spring Corp. v. United Food & Com. Workers Int'l Union, Loc. 1445*, 314 F.3d 29, 33 (1st Cir. 2002))).

### 3. Public Policy

Marks argues that "the arbitrator's decision . . . creates a diametric incongruity between what, in relevant terms, are identical consumer protection statutes: the EFTA and TILA," which he contends have "a clearly established public policy prerogative that these two statutes, among others, be broadly interpreted to protect individual consumers." Pet. ¶ 29.

As an initial matter, it is not clear that a violation of public policy remains a valid basis to overturn an arbitration award. *See Sanwan Tr. v. Lindsay, Inc.*, 251 F. Supp. 3d 353, 360 (D. Mass. 2017) (holding that public policy no longer remains a viable basis to vacate). This Court need not resolve that dispute, however, as Marks fails to show that the arbitrator's decision violates clearly

established public policy. A court may only overturn an arbitration award for violating public policy after an "examination of whether the award created any explicit conflict with other laws and legal precedents rather than an assessment of general considerations of supposed public interests." *Prudential-Bache Sec., Inc. v. Tanner*, 72 F.3d 234, 241 (1st Cir. 1995) (internal quotation marks omitted) (quoting *Misco*, 484 U.S. at 43). Any violation of such a policy must then be "clearly shown." *Misco*, 484 U.S. at 43. The policy in question must be "ascertained by reference to positive law and not from general considerations of supposed public interests." *E. Assoc. Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62–63 (2000). Courts decline to vacate arbitration awards that "violate[] no specific provision of any law or regulation." *Bos. Med. Ctr. v. SEIU, Loc. 285*, 260 F.3d 16, 25 (1st Cir. 2011) (quoting *E. Assoc. Coal.*, 531 U.S. at 66).

The Court notes that it is unclear how this argument is distinct from Marks's manifest disregard of law argument. When courts consider whether an arbitration award violates public policy, they generally look to whether the order itself, not the underlying legal or factual determination, violates public policy. *See, e.g.*, *Wynn MA, LLC v. Unite Here!, Loc. 26*, 2024 WL 2962805, at *8 (D. Mass. June 12, 2024) (analyzing whether arbitrator's order to reinstate employee who has committed sexual harassment violated public policy against harassment). The public policy underlying the EFTA in favor of consumers cannot be so broad as to say that all arbitration awards *against* an individual consumer violate said policy.

Regardless, the Court cannot conclude that the arbitrator's decision violated public policy such that the decision must be overturned. While the EFTA seeks to protect consumers, *see, e.g.*, *Curits v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234, 239 (4th Cir. 2019), this type of general policy concern fails to create a "explicit, well-defined, and dominant public policy," *Bos. Med.*

*Ctr.*, 260 F.3d at 25, that would prohibit reading an exception written into the statute broadly and literally. The EFTA itself, despite generally favoring consumers, carves out certain exceptions, including "bona fide trust accounts." 15 U.S.C § 1693a(2); *see also* 12 CFR § 205.2(b)(3). Simply put, where the statute itself creates an exception, it cannot violate public policy to read that exception literally, even if that results in a ruling adverse to an individual consumer.

### 4. Modifying the Award

Marks makes no separate argument about modifying the award. Section 11 states that, upon application of a party, a district court may modify or correct an award in relevant part "[w]here the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted." 9 U.S.C. § 11(b). Like under section 10, review under section 11 is narrow. *See Durant*, 2025 WL 1361700, at *4 ("[W]hen determining whether to uphold, vacate, or modify an arbitration award, federal courts apply 'one of the narrowest standards of judicial review in all of American jurisprudence.'" (quoting *Lattimer–Stevens Co. v. United Steelworkers*, 913 F.2d 1166, 1169 (6th Cir. 1990))). Having concluded there is no basis to vacate the arbitration award, there is also no basis to modify it.

### B. Petition to Confirm the Award

Because Marks has failed to demonstrate his entitlement to relief under section 10(a)(4) of the FAA, his petition to vacate the arbitration award must be denied, and Wells Fargo's timely cross-motion to confirm the arbitration award must, correspondingly, be granted. *See* 9 U.S.C. § 9 ("[A]t any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."); *Hall St.*, 552 U.S. at 587 ("[Section 9's] provision for judicial confirmation carries no hint of flexibility.").

## IV.     Conclusion

For the foregoing reasons, Marks's motion to vacate or modify the arbitration award, Dkt. 1, is DENIED, and Wells Fargo's motion to confirm the arbitration award, Dkt. 7, is GRANTED.

**So Ordered.**

Dated:  February 18, 2026

/s/ Brian E. Murphy
Brian E. Murphy
Judge, United States District Court